

RECEIVED

MAR 2 1 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ARNOLD LEONG, ET AL.                              CIVIL ACTION NO.: 12-0711

VERSUS                                            JUDGE DOHERTY

CELLCO PARTNERSHIP, ET AL.                        MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before this Court are two motions: (1) Centennial Communications Corporation and

New Cingular Wireless PCS, LLC's Partial Motion to Dismiss the Second Amended Complaint

[Doc. 49], filed by defendants Centennial Communications Corporation and New Cingular Wireless

PCS, LLC;[1] and (2) Defendant Cellco Partnership d/b/a Verizon Wireless and Verizon Wireless

---

[1] In their Second Amended Complaint, the plaintiffs assert claims against Centennial Communications Corp. ("Centennial"), AT&T, Inc., and New Cingular Wireless PCS, LLC, who they refer to throughout their complaint collectively as "AT&T." Despite the foregoing, in a footnote of their Complaint, plaintiffs explain:

> On information and belief, before Centennial was acquired by AT&T, Centennial's majority interest in the Partnership was divided between Centennial Lafayette Communications, LLC and its parent, Cellular Operating Company, LLC. Cellular Operating Company subsequently contributed its interest in the Partnership to Centennial Lafayette Communications, LLC. Centennial Operating Company, LLC is no longer in existence. Its successor in interest is Defendant Centennial Communications Corp. Centennial Lafayette Communications, LLC is no longer in existence; its successor in interest is Defendant New Cingular Wireless PCS, LLC. To avoid confusion, all of these entities will be collectively referred to herein as "Centennial."

*See* Plaintiffs' Second Amended Complaint, Doc. 48, at p. 2, n.1.

In the instant case, although the plaintiffs have grouped Centennial Communications and New Cingular Wireless together with AT&T in their Second Amended Complaint, AT&T does not join in the instant motion at this time. Rather, AT&T has filed a separate motion to dismiss (pending before the magistrate judge) [Doc. 50], arguing this Court does not have personal jurisdiction over it. In its motion, AT&T argues that, should this Court find it has personal jurisdiction over AT&T, AT&T joins Centennial Communications and New Cingular Wireless in the instant motion to dismiss. Thus, if the Court determines it has personal jurisdiction over AT&T, the ruling entered today with respect to Centennial and New Cingular Wireless will apply to AT&T as well.

For ease of reference in the instant Ruling, Centennial Communications and New Cingular Wireless will be referred to collectively as "Centennial."

Personal Communications LP's Motion Under Federal Rule of Civil Procedure 12(b)(6) to Dismiss, in part, Plaintiffs' Second Amended Complaint, With Prejudice [Doc. 74], filed by defendants Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and Verizon Wireless Personal Communications LC ("VWPCLP") (collectively, "Verizon" or "the Verizon defendants").   The motions are opposed by the plaintiffs Arnold Leong, Raveesh Kumra, CELL-CAC V-T6, Delchi Corp., James Bryant, Lloyd Dawson, Chin Cellular, Donald Kunkle, Lillian Lapa, Kathleen Sloan Revocable Trust, Lalith Wijayasuriya, Celtic Cellular, George Gordon, Kenneth H. Moore, Robert and May Cinkutis, Dominic Strazzula, Timothy Lamonte, and Marily Triolo Fitzgerald (collectively, "the plaintiffs") [Docs. 64 and 66, respectively].

For the following reasons, Verizon's Motion to Dismiss [Doc. 74] is GRANTED IN PART AND DENIED IN PART.  Additionally, Centennial's Motion to Dismiss [Doc. 49] is GRANTED.

## I.      Factual and Procedural Background

The instant lawsuit arises out of a merger transaction in which the Plaintiffs – former owners of the minority interests in the Lafayette Cellular Telephone Company ('hereinafter, "the Partnership") – were cashed out of the Partnership, a transaction which essentially merged the Partnership with a wholly-owned Verizon Wireless entity.  As a general matter, in its motion, Verizon characterizes the claims of the plaintiffs as falling into two broad categories: (1) the merger violated the Partnership Agreement and fiduciary duties owed by the Verizon defendants, primarily because the transaction did not receive unanimous approval of the partners; and (2) the plaintiffs (again, the minority partners in the Partnership) were paid too little for their partnership interests. Verizon argues all of the claims that fall into the first category – which are the claims sought to be dismissed in the instant motion (breach of contract, breach of fiduciary duty, unjust enrichment,

2

breach of the implied covenant of good faith and fair dealing, and conversion) – fail at the pleading stage.[2]  Centennial's motion argues the plaintiffs' claim for unjust enrichment must fall where the plaintiffs have also asserted a claim against Centennial for breach of contract.

The plaintiffs paint a vastly different picture of the overall factual scenario of the case.  In response to the motion filed by Verizon, plaintiffs provide the following factual information concerning the circumstances of the instant lawsuit:

> Plaintiffs were minority partners in the Lafayette Cellular Telephone Company (the "Partnership").  For many years, Defendant Centennial Communications Corp. ("Centennial") owned the majority general partnership interest in the Partnership. When AT&T acquired all of Centennial's assets in 2009, the Federal Communications Commission and the Department of Justice required AT&T to divest certain Centennial assets, including the majority interest in the Partnership. To comply with that requirement, AT&T arranged the transfer of the majority interest in the Partnership to Defendant Cellco Partnership ("Verizon Wireless"), which already owned and operated certain entities that were direct competitors of the Partnership in Louisiana.  Shortly after it acquired the majority interest in the Partnership, and over the objection of the minority partners, Verizon Wireless orchestrated the merger of the Partnership with Lafayette Mergeco, LLC, a wholly-owned affiliate of Verizon Wireless that was a direct competitor of the Partnership in the Lafayette market.  Through the mechanism of that merger, Verizon Wireless's ownership interest in Lafayette Mergeco was converted into an interest in the Partnership exactly equivalent to the combined interests held by the minority partners, and the minority partners were forced to cash out their interests at a price determined by Verizon Wireless based on a valuation of the Partnership it commissioned from KPMG.  By unilaterally structuring and executing this merger, Verizon Wireless appropriated all of the Partnership's assets for itself and effectively ejected the minority partners without their consent.  Plaintiffs allege that this action and the manner in which it was accomplished constitute a material breach of both the Partnership Agreement and Verizon Wireless's fiduciary obligations to its partners.

> On November 28, 2012, Plaintiffs filed their Second Amended Complaint ("SAC") in this action.  In it, Plaintiffs assert claims against Verizon Wireless for breach of contract, breach of fiduciary duty, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and conversion in connection with its carrying out of

---

[2] Verizon argues the only claim the plaintiffs allege that survives the pleading stage is their claim that their partnership interests were undervalued.  That claim is not a subject of the instant motions.

3

the merger.[3]

The foregoing scenario appears to focus more on the *manner* in which the merger vote was taken, plaintiffs appearing to argue Verizon – already operating under a conflict of interest – "squeezed out" the minority partners in order to force the merger, by taking a number of actions that violated the Partnership Agreement, including divulging confidential partnership information and improperly removing a minority partner representative from the Executive Committee, all in an effort to accomplish a "majority vote" that would be in conformity with the Partnership Agreement. As a remedy for their breach of contract, the plaintiffs seek Verizon's forfeiture of its Partnership interest pursuant to Section 8.2 of the Partnership Agreement.[4]

Against the backdrop of these differing factual scenarios, the Court consider the standard for deciding a Rule 12(b)(6) motion to dismiss.

## II.      Motion to Dismiss Standard

### A.      General Standard

When reviewing a motion to dismiss, this Court's "analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) *cert. denied*, 133 S.Ct. 32, 183 L.Ed. 2d 678 (2012), *citing Fin.*

---

[3] *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss, Doc. 66, at pp. 1-2 (internal citations omitted).

[4] Section 8.2 of the Partnership Agreement states:

> 8.2  Sale on Material Default.  Each Partner who commits an uncured material default or voluntarily causes a dissolution contrary to Section 9.1, shall be required to sell its Ownership Interest, and subject to any required FCC consent, to transfer to the other Partners pro rata its Ownership Interest, if any, for an aggregate amount equal to the balance of its capital account.  The provisions of this Section 8.2 may be waived on a case by case basis by the Executive Committee in its sole discretion.

4

*Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  The Court reviews the motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff.*" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted) (emphasis added).  However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level.*"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (emphasis added).

"To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (emphasis added).  Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by or surrounding those facts.  The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Id.*, *quoting Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (emphasis added).  Stated differently, the jurisprudence instructs if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "*nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 2008 WL 3244283 (5th Cir. Aug. 8, 2008), *citing Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (emphasis added).  Again, the jurisprudence instructs that determining whether this

5

standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

### B.   Attachment of Materials

In deciding a motion to dismiss, the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken. *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003), *citing Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996).  In the instant case, Verizon attaches numerous documents and extraneous materials to their motion, including copies of the Partnership Agreement, Executive Committee Meeting Minutes, cases decided by other courts, and partnership agreements between other telecommunications companies referenced in the other decisions.  Verizon argues this Court's reference to those materials is necessary and proper and does not, thereby, convert the instant motion to a motion for summary judgment.

Upon initial review, the only document this Court need consider in adjudicating the instant motions was the Partnership Agreement, which is paraphrased extensively in Plaintiffs' Second Amended Complaint [Doc. 48], and is thereby central to the plaintiffs' allegations.  Under the law, the Court's reference to and consideration of this document does not convert the instant motion to a motion for summary judgment or change the standard under which this Court should adjudicate the motion.

Under these circumstances, and considering the plaintiffs have not objected to the procedural posture in which the questions have been presented to the Court (*i.e.*, via Rule 12(b)(6)), this Court will decide the instant motions as Rule 12(b)(6) motions to dismiss.

## III.    Law and Analysis

### A.    Delaware Law Governs Substantive Claims

The parties do not dispute that Delaware law applies to the plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing.  Indeed, the claims for breach of the Partnership Agreement and breach of the implied covenant of good faith and fair dealing are specifically declared as being governed by Delaware law under Section 10.7 of the Partnership Agreement, which expressly provides that "[t]his Partnership Agreement and the rights of the Partners hereunder shall be governed, interpreted, and enforced in accordance with the laws of Delaware."[5]  It is undisputed that the plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing arise out of the Partnership Agreement itself and, therefore, are governed by Section 10.7, which applies Delaware law.

The parties, also, do not dispute the plaintiff's claim for breach of fiduciary duty against Verizon falls under Delaware law.  The Partnership in question is a Delaware partnership, organized under the laws of the state of Delaware.[6]  Verizon argues – and plaintiffs do not dispute – Delaware law governs claims that "inherently deal with the internal mechanisms for authorizing action by the Partnership and relations among the partners," and that "Delaware law governs such matters for a Delaware partnership."[7]  Louisiana law confirms the foregoing, stating the "organization, internal affairs, and liability of limited partners of a foreign partnership that is duly registered under this Chapter shall be governed by the laws of the of the State under which it is organized." *See* La. Rev.

---

[5] *See* Verizon's Motion to Dismiss, Doc. 74, at Exhibit 1, §10.7.

[6] *See* Plaintiffs' Second Amended Complaint, Doc. 48, at ¶4.

[7] *See* Verizon's Motion to Dismiss, Doc. 74, at p. 10.

7

Stat. Ann. §9:3425.    The Louisiana Civil Code, also, expresses that "[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ Code art. 3540 (West. 2013).

The only area in which the parties potentially disagree about the applicable law is with respect to the plaintiffs' claims for unjust enrichment and conversion. Verizon argues Delaware law applies to these claims as well, providing support for its argument, set forth above. The plaintiffs do not argue otherwise, but in sections addressing their claim for unjust enrichment and conversion in their briefs, plaintiffs argue their claims are allowed *under Louisiana law*, and then alternatively argue the claims are, also, permitted under Delaware law. Yet, nowhere in their briefing do the plaintiffs expressly argue for the application of Louisiana law *as opposed to Delaware law* with respect to either claim.

Per the Partnership Agreement, Delaware law is the law chosen by the parties to govern their contractual disputes, and the Partnership is a Delaware partnership that appears to be governed by Delaware law. It does not appear that Delaware law contravenes the public policy of Louisiana law on any point at issue in these motions, and indeed, no party argues there is such contravention of public policy. Moreover, Verizon's argues the following:

> ....the unjust enrichment and conversion claims inescapably rest on interpretation of the Partnership Agreement. Both claims depend on the proposition that the merger was wrongful, but determining whether the merger was wrongful or not necessarily depends on constructing the Partnership Agreement. As a result, Delaware law must govern the unjust enrichment and conversion claims.[8]

Verizon's argument is well-taken. Thus, without substantive argument from the plaintiffs

---

[8] *See* Verizon's Motion to Dismiss, Doc. 74, at p. 27.

that Delaware law should *not* apply to the plaintiffs' claims, this Court concludes Delaware law applies to the plaintiffs' claims for unjust enrichment and conversion, noting plaintiffs' lack of substantive *argument* on this point.

**B.     Verizon's Motion to Dismiss [Doc. 52]**

Verizon seeks dismissal of the plaintiffs' claim for breach of contract, breach of fiduciary duty, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and conversion.

**1.     Breach of contact and breach of the covenant of good faith and fair dealing**

Verizon characterizes the plaintiffs' breach of contract claims as being very simple, that is – according to *Verizon* – plaintiffs allege the contract (the Partnership Agreement itself) was breached because the merger in question required the unanimous approval of all partners, and the vote to approve the merger was not unanimous.  In its motion to dismiss, citing various provisions of the Partnership Agreement, Verizon argues the plaintiffs' breach of contract claim should be dismissed because, as a matter of law, the express language of the Partnership Agreement required only a majority vote, not the argued unanimous vote, to approve the merger in question, and a majority of the partners did, indeed, approve the merger.  Verizon, also, argues the plaintiffs' claim for Verizon's forfeiture of its partnership interest for a remedy for Verizon's breach of contract should also be dismissed for two reasons: (1) there has been no material default by Verizon under the Partnership Agreement; (2) written notice of default from the Executive Committee, which is argued to be an indispensable condition precedent to invocation of the forfeiture remedy, has not been complied with.

9

Notwithstanding Verizon's simplified version of the facts, in response to the motion, the plaintiffs present a far more nuanced picture of their allegations.  The plaintiffs argue their breach of contract claim is premised on three independent, and fact-intensive, theories that far exceed a simple allegation involving a majority vote, as follows: (1) There was a squeeze-out of the minority partners, which breached an implied contractual obligation prohibiting the majority partner from voting its ownership interest to force the minority partners to sell their interests against their will; (2) Verizon Wireless breached the Partnership Agreement when it accomplished the merger by disclosing confidential and proprietary information to a third party, using confidential partnership information for personal gain, acting on behalf of the Partnership (and not through the Executive Committee) to negotiate the merger, and obstructing and removing the minority representative to the Executive Committee (thus, the disclosure of confidential information, itself, constitutes a breach); and (3) because removal of the minority representative to the Executive Committee could not be effected without the affirmative participation of the minority partners, Verizon could not unilaterally adopt the merger plan by Written Consent under Delaware law.

Most significantly, in their response to the motion, the plaintiffs state:

> Throughout its motion, Verizon Wireless conflates the *power* of a majority partner to effect a merger with the *right* of a majority partner to "squeeze out" minority partners against their will.  Plaintiffs do not dispute that a majority partner can cause the Partnership to merge.  What Plaintiffs dispute is Verizon Wireless's contention that the Partnership Agreement allows the majority partner to unilaterally effect a merger in a manner that squeezes out minority partners against their will.[9]

The Plaintiffs argue Verizon's "squeeze-out" of the minority partners violated an implied agreement (arising in the context of the covenant of good faith and fair dealing) that the majority

---

[9] *See* Plaintiffs' Opposition Brief to Defendants' Motion to Dismiss, Doc. 66, at pp. 4-5 (emphasis added).

partner in the Partnership would not vote its ownership interest to force the minority partners to sell their interests against their will.  Thus, under the facts as alleged by the plaintiffs, the breach of contract claim is interwoven with their claim for breach of the implied covenant of good faith and fair dealing, both claims exceeding the scope of Verizon's simplified "majority vote" argument.

Under Delaware law, there is an implied covenant of good faith and fair dealing contained within every contract, and such covenant is a duty owed by every general partner.  *See e.g., Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985) ("An implied covenant of good faith and fair dealing inheres in every contract.").  In *Nemec v. Shrader*, the Delaware Supreme Court explained the implied covenant of good faith and fair dealing as follows:

> The implied covenant of good faith and fair dealing involves a "cautious enterprise," inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated.  "[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement."  We will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.  When conducting this analysis, we must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.  Parties have a right to enter into good and bad contracts, the law enforces both.

991 A.2d 1120, 1125-26 (Del. Supr. 2010) (internal citations omitted).

Thus, in order to determine whether express contractual provisions supersede the implied covenant, it is necessary to explore the parties' original expectations concerning the outcome of the agreement at the time of making the contract.  *Id.* at 1126.  The Delaware Supreme Court has stated consideration of the implied covenant is a "fact-intensive exercise."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. Supr. 2005).  Under Delaware law, "parties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by

11

taking advantage of their position to control implementation of the agreement's terms." *Id.* at 442.

Here, the plaintiffs allege Verizon's "squeeze out" of the minority partners violate an implied agreement within the Partnership Agreement that the majority partner would not vote its ownership interest to force the minority partners to sell their interests against their will.  This claim weaves breach of the covenant of good faith and fair dealing into breach of contract.  The plaintiffs argue they should be permitted to discover and proffer evidence to prove their claims before the claims are summarily dismissed at the pleading stage of the litigation.

Indeed, the standard for this Court's inquiry at this stage of the litigation is as follows:

> "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (emphasis added).  Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by or surrounding those facts.  The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

Here, this Court concludes the plaintiffs' complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" for breach of contract and breach of the covenant of good faith and fair dealing.  Specifically, the plaintiffs allege Verizon breached the Partnership Agreement by wrongfully disclosing confidential and proprietary Partnership information; using Partnership information for personal gain; acting directly on behalf of the Partnership; and obstructing and removing the minority representative to the Executive Committe in violation of Partnership rules.  Additionally, the Plaintiffs argue Verizon breached an implied agreement not to use its guaranteed majority ownership interest to force the minority

partners to sell their interests against their will.  From a factual standpoint, this Court concludes the plaintiffs have sufficiently stated their claims.  Whether the plaintiffs can prove their claims is for another day, however, this Court cannot determine at this state of the litigation that the plaintiffs could not prevail on such claims as a matter of law.

Verizon's citations to other litigation involving forced buyouts of regional cellular partnerships as support for its argument that the plaintiffs cannot succeed, as a matter of law, on their claims for breach of contract and breach of the covenant of good faith and fair dealing are misplaced.[10]  Indeed, in the *J&J Celcom* decision, the issue of the claim for breach of good faith and fair dealing was not decided until the summary judgment stage, the Court granting summary judgment in favor of AT&T, but only after concluding the plaintiffs had not "presented any evidence indicating that the partners in these partnership agreements intended to limit to whom the partnership assets could be sold."  *J&J Celcom v. AT&T Wireless Serv., Inc.*, 2005 WL 1126924 (W.D. Wash. May 10, 2005) (unpublished), *aff'd*, 215 Fed. Appx. 616 (9th Cir. 2006).  In *Temvik Cellular*, the court did not consider a claim for breach of contract through improper means, but rather, dealt with a request for an injunction to enjoin the sale of a partnership's asserts.  *See Temvik Cellular, Inc. V. AT&T Mobility Wireless, Operations Holdings*, LLC, No. 10-15294-E (Dallas Dist. Ct. June 10, 2011).  Thus, the foregoing cases do not guide this Court's decision with any great clarity at this stage of the litigation.

---

[10] This Court is aware, and the plaintiffs readily agree, that many wireless partnership agreements that have been through litigation in other courts contain virtually identical provisions as the provisions contained in the Partnership Agreement in the instant case.  Nevertheless, as the plaintiffs point out, the issues in the cases cited by the Verizon are not the same issues as those raised in this case, and, in any event, this Court is bound by the standard of Rule 12(b)(6) which requires only that the plaintiffs's complaint "contains *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (emphasis added).

Moreover, because, apparently, it characterizes the plaintiffs' claim for breach of contract as a straightfoward matter relating to the issue of the majority vote, Verizon does not address the plaintiffs' altogether separate and independent allegations that Verizon violated the Partnership Agreement "by disclosing confidential and proprietary information to a third party, using confidential partnership information for personal gain, acting on behalf of the Partnership (and not through the Executive Committee) to negotiate the merger, and obstructing and removing the minority representative to the Executive Committee." The foregoing facts are alleged as a partial factual basis for the plaintiffs' breach of contract claim.

For the foregoing reasons, Verizon's motion to dismiss the plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing is DENIED.  Because this Court concludes it cannot dismiss the foregoing claims, Verizon's motion to dismiss the plaintiffs' forfeiture remedy is DENIED as premature.

### 2.      Breach of fiduciary duty

In Count 4 of their Second Amended Complaint, the plaintiffs list the following alleged breaches of fiduciary duties against the Verizon defendants:

- conducting secret negotiations with themselves and their affiliates to acquire the minority partners' interests in the Partnership;

- engaging KPMG Economic Valuation Services Group ("KPMG") to prepare the valuation without notice of or a vote of the Executive Committee;

- sharing confidential Partnership information with KPMG and an affiliate of Verizon Wireless that competed directly with the Partnership;

- using Partnership information for their own benefit and to the detriment of their partners;

- representing that KPMG's valuation was "independent" when it was not;

14

- falsely representing that the merger of the Partnership and Lafayette Mergeco could be accomplished by a vote of a majority of Partnership interests;

- participating in an egregious conflict of interest;

- failing to allow the minority partners a reasonable opportunity to review the data and methodology utilized in preparing the KPMG valuation;

- failing to give minority partners reasonable access to the data provided to KPMG;

- failing to consider material factors in valuing the Partnership;

- failing to give good-fath consideration or to accept the offer by minority partners to contribute capital to retain their interest;

- and wrongfully forcing the minority partners to relinquish their interests for payments based on the KPMG valuation.

Under Delaware law, where a dispute arises, and the dispute arises from an obligation that is expressly addressed in a contract, that dispute will be reached as a breach of contract claim. *See, e.g., Nemec v. Shrader*, 991 A.2d 1120, 11229 (Del. Supr. 2010). The plaintiffs acknowledge the prevailing Delaware rule to this effect and "do not dispute that any of their fiduciary claims against Verizon that arise out of the same conduct that forms the basis of their contract claims are encompasse[d] by those contract claims." However, plaintiffs argue their claim that the merger consideration failed to reflect fair value is a claim for breach of fiduciary duty that does not arise out of the Partnership Agreement, and that "Verizon does not seek dismissal of that claim in its motion."

In their reply brief, Verizon seeks to clarify that all fiduciary duty claims addressing the *process* of the merger, including claims that address whether the merger itself was fair, are subsumed within the plaintiffs' breach of contract claims, and Verizon does, indeed, seek to dismiss those claims under Delaware law. Verizon argues the only fiduciary duty claim that can survive the instant motion, and therefore, is not sought to be dismissed pursuant to the motion, is the plaintiffs' claim

that the price paid to the minority partners was not a fair price.  Verizon acknowledges the foregoing question is a question of fact and is not governed by the Partnership Agreement.

Thus, it appears undisputed that Verizon does not seek to dismiss the plaintiffs' claim that the price paid to the minority partners for their partnership interests was fundamentally unfair.  To the extent this claim falls under the plaintiffs' breach of fiduciary duty claim, it is not the subject of the instant motion.  However, all other claims challenging the fundamental fairness of the merger transaction are subsumed within the plaintiffs' breach of contract claim and must be dismissed.

Despite the clarifying language in Verizon's brief, Verizon's actual motion seeks to dismiss the *entirety* of the plaintiffs' breach of fiduciary duty claim.  For this reason, Verizon's motion must be GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED to the extent that all of the plaintiffs' claims for breach of fiduciary duty against the Verizon defendants that arise out of the Partnership Agreement itself, or which are encompassed within the plaintiffs' breach of contract claim, are DENIED AND DISMISSED WITH PREJUDICE.  This dismissal includes a dismissal of all of the plaintiffs' claims that the merger transaction in question was fundamentally unfair.  However, the motion is DENIED to the extent that it seeks to dismiss the plaintiffs' claim that the *merger consideration* was unfair in that the minority partners were not paid fair consideration for  their partnership interests.   The foregoing claim, to the extent it can be characterized as a claim for breach of fiduciary duty, survives and is not dismissed in this Ruling.

### 3.    Unjust enrichment

Verizon argues the plaintiffs' claim for unjust enrichment must be dismissed when there is an express contract.  In response, plaintiffs rely primarily on Rule 8 of the Federal Rules of Civil Procedure, which allows a party to present alternative, even inconsistent, theories of recovery based

upon the same facts.[11]

Notwithstanding Rule 8, under Delaware law, a claim for unjust enrichment[12] is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim. *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (De. Ch. 2009).   In other words, if "the contract is the measure of [the plaintiff's] right, there can be no recovery under an unjust enrichment theory independent of it."   Thus, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship ... a claim for unjust enrichment will be dismissed." *Kuroda*, 971 A.2d at 891.[13]

---

[11] Rule 8(d) of the Federal Rules of Civil Procedure states in relevant part:

> (d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

> > (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

> > (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R.Civ. P. 8(d)(2)&(3).

Also, Rule 8(a)(d) allows a party to include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed.R.Civ.P. 8(a)(3).

[12] "Unjust enrichment" is defined under Delaware law as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del.1999), *quoting Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del.1988).

[13] *Kuroda* is the only recent Delaware case this Court could find setting forth this principal succinctly. While there are numerous cases addressing the issue, none of the cases are published decisions.  In one such unpublished case, *BAE Systems Information and Electronic Systems Integration, Inc., v. Lockheed Martin*, the court addresses the interplay between unjust enrichment, breach of contract, and alternative pleading, as follows:

> BAE's argument that its unjust enrichment claim must survive because it is pled as an alternative to its contract claim, and such a pleading is allowed, does not change this result. In some instances, both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories for recovery. Such occurrences are factually distinguishable, however, and, more importantly, do not stand for the proposition that an unjust enrichment claim must

17

In the instant case, the Partnership Agreement between the parties is argued to exist and it is the measure of the plaintiffs' rights and controls the parties' contractual relationship. Indeed, beyond arguing that Rule 8 permits the plaintiffs to allege two alternative theories of liability, the plaintiffs set forth no facts which are specific to their unjust enrichment claim which might support such a claim in the face of an accepted contract; that is, it is clear the same facts underlying the unjust enrichment claim are the facts that underlie the breach of contract claim. The stated policy of Delaware is that in such circumstances, regardless of whether the unjust enrichment claim is pled as an alternative theory of liability, and regardless of whether the breach of contract claim is later dismissed, the unjust enrichment claim cannot stand and must be dismissed for failure to state a claim.[14]

---

survive a motion to dismiss when pled alternatively with a contract claim that will move beyond the motion to dismiss stage. A right to plead alternative theories does not obviate the obligation to provide factual support for each theory. Here, there is no independent basis for an unjust enrichment claim because the Amended Complaint contains no facts challenging Lockheed conduct on a basis not comprehensively governed by the MOA. Because BAE pleads no right to recovery not controlled by contract there can be no claim for unjust enrichment. BAE cannot, on these facts, use an unjust enrichment theory to rewrite a comprehensive contract governing the entirety of the parties' relevant relationship after finding disappointment in the resulting agreement. The parties here attempted to memorialize their agreement as to ATS opportunities, and whether or not BAE may enforce its interpretation of the arrangement will depend on the MOA. BAE's unjust enrichment claim will be dismissed.

2009 WL 264088 (Del. Ch. Feb. 3, 2009) (unpublished) (internal citations omitted).

[14] Verizon also correctly argues that the same result would be reached under Louisiana law. In *Caillet v. Regions Financial Corp.*, 282 F.R.D. 406, *10 (W.D. La. Mar. 5, 2012) (J. Doherty), this Court stated:

Pursuant to La. Civ.Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." La. Civ.Code art. 2298; *Walters v. MedSouth Record Management, LLC*, 38 So.3d 245, 246 (La.2010) (having pled a delictual action, plaintiff was precluded from seeking to recover under theory of unjust enrichment); *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026, 1030 (5th Cir.1984) (claim of unjust enrichment unavailable where contract governed the parties relationship). The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Id.* (quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La.App. 1st Cir.1988)). As plaintiffs in this matter have several "express remedies" available to them, as evidenced by their Complaint, they are precluded from seeking to recover under the theory of unjust enrichment. Accordingly,

18

Considering the foregoing, Verizon's motion to dismiss the plaintiffs' unjust enrichment claim is GRANTED, and the plaintiffs' claim for unjust enrichment against the Verizon defendants is DENIED AND DISMISSED WITH PREJUDICE.

### 4.    Conversion

Plaintiffs' claim for conversion is that the Verizon defendants converted the plaintiffs' property by taking "possession and control of the Plaintiffs' interests in the Partnership when they had no right to do so."[15] Verizon argues the plaintiffs' claim for conversion must be dismissed under Delaware law because it is duplicative of their breach of contract claim.

Conversion is defined under Delaware law as "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Kuroda*, 971 A.2d at 889, *citing Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933). Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff "generally must sue in contract, and not in tort." *Kuroda*, 971 A.2d at 889. Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract. *Id.*   As the court explained in *Kuroda*:

> . . . . conversion is the wrongful exercise of dominion over the property of another, in denial of that person's right, or inconsistent with it. Thus, to establish a claim for conversion apart from the contract claim, Kuroda would have to show that he had a right to the money-other than a right pursuant to the contract-that was violated by the defendants' exercise of dominion over the money. The only right articulated in the complaint is Kuroda's right to the money pursuant to the contract. Because the complaint fails to identify the interference with a right to the money independent of rights granted under the contract, the conversion claim must be dismissed.

---

plaintiffs' claim for unjust enrichment is DISMISSED.

[15] *See* Plaintiffs' Second Amended Complaint, Doc. 48, ¶130.

*Id.*

In their response, the plaintiffs do not demonstrate that their claim for conversion is separate factually or legally from their breach of contract claim, *i.e.*, that they had a right to money – *other than* the right pursuant to the contract – that was violated by Verizon's exercise of dominion over the money. Rather, as in *Kuroda*, the only right articulated in the complaint is the plaintiffs' argued right to their partnership interest, which is money plaintiffs allege they are owed pursuant to the Partnership Agreement. Indeed, the plaintiffs do not argue their claim for conversion is separate from their breach of contract claim; rather, the plaintiffs merely argue their claim for conversion should not be dismissed because it is alternatively pled under Fed. R. Civ. P. 8. The foregoing is not sufficient under Delaware law for the claim of conversion to survive in the face of an accepted governing contract.[16]

Considering the foregoing, Verizon's motion to dismiss the plaintiffs' conversion claim is GRANTED, and the plaintiffs' claims for conversion against the Verizon defendants is DENIED AND DISMISSED WITH PREJUDICE.

### C.    Centennial's Motion to Dismiss [Doc. 49]

Centennial seeks to dismiss the plaintiffs' claim for unjust enrichment on the same ground as alleged by Verizon, that is, because the plaintiffs have alleged claims for breach of contract and breach of fiduciary duty against Centennial, the plaintiffs have an adequate remedy at law, and the

---

[16] Verizon argues to the extent the conversion claim is governed by Louisiana law, it must be dismissed as prescribed under Article 3492 of the Louisiana Civil Code, which prescribes a one-year prescriptive period to torts (including conversion) under Louisiana law. Although this Court concludes Delaware law applies to the plaintiffs' conversion claim against Verizon, the plaintiffs do not oppose the prescription argument. Therefore, if Louisiana law were to apply to the conversion claim, the motion to dismiss the conversion claim would still be granted as unopposed on grounds the conversion claim against Verizon is prescribed.

claim for unjust enrichment must be dismissed.[17]

This Court has already concluded Delaware law applies to the plaintiffs' unjust enrichment claims against the various defendants. Under Delaware law, regardless of whether an unjust enrichment claim is pled as an alternative theory of liability, and regardless of whether the breach of contract claim is later dismissed, a claim for unjust enrichment claim cannot stand and must be dismissed for failure to state a claim where there is another adequate remedy at law pled. Here, the Partnership Agreement defines the relationship between the plaintiffs and Centennial and provides an adequate remedy to the plaintiffs. Under the circumstances, the plaintiffs' unjust enrichment claim against Centennial cannot stand and must be dismissed for failure to state a claim.

Considering the foregoing, Centennial's Partial Motion to Dismiss [Doc. 49] the plaintiffs' unjust enrichment claim is GRANTED, and the plaintiffs' claim for unjust enrichment against Centennial Communications and New Cingular Wireless is DENIED AND DISMISSED WITH PREJUDICE.

## III.     Conclusion

For the foregoing reasons,

IT IS ORDERED that Verizon's Motion to Dismiss [Doc. 74] is GRANTED IN PART AND DENIED IN PART. The motion is DENIED with respect to the plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, this Court concluding the plaintiffs have pled sufficient facts to sustain those claims at this stage of the proceedings. The

---

[17] As stated earlier in this Ruling, Centennial Communications and New Cingular Wireless argue the application of Louisiana law to this issue, not Delaware law. However, this Court, noting the lack of substantive argument on the part of the plaintiffs, has concluded Delaware law applies to the plaintiffs' claims of unjust enrichment.

motion to dismiss plaintiffs' breach of fiduciary duty claim is GRANTED IN PART AND DENIED IN PART.   The motion is GRANTED to the extent that all of the plaintiffs' claims for breach of fiduciary duty against the Verizon defendants that arise out of the Partnership Agreement itself, or which are encompassed within the plaintiffs' breach of contract claim, are DENIED AND DISMISSED WITH PREJUDICE.  This dismissal includes a dismissal of all of the plaintiffs' claims that the merger transaction in question was fundamentally unfair.   However, the motion is DENIED to the extent that it seeks to dismiss the plaintiffs' claim that the *merger consideration* was unfair in that the minority partners were not paid fair consideration for their partnership interests.   The foregoing claim, to the extent it can be characterized as a claim for breach of fiduciary duty, survives and is not dismissed in this Ruling.   The motion is also GRANTED with respect to the plaintiffs' claims against Verizon for unjust enrichment and conversion, and the foregoing claims are DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Centennial Communications Corporation and New Cingular Wireless Partial Motion to Dismiss [Doc. 49] is GRANTED, and the plaintiffs' claim of unjust enrichment against Centennial Communications Corporation and New Cingular Wireless is DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____2/_____ day of March, 2013.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE