UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ARNOLD LEONG, ET AL.                    CIVIL ACTION 6:12cv-00711


VERSUS                                  JUDGE DOHERTY

CELLCO PARTNERSHIP, ET AL.              MAGISTRATE JUDGE HANNA


## **REPORT AND RECOMMENDATION**


Currently pending before the court is defendant AT&T Inc.'s motion to dismiss for lack of personal jurisdiction.  (Rec. Doc. 50).  The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  (Rec. Doc. 79). The motion is opposed.  For the reasons set forth below, the undersigned finds that the court has no personal jurisdiction over AT&T Inc. and recommends that the motion be granted and the claims asserted against AT&T Inc. in this lawsuit be dismissed without prejudice.


## **BACKGROUND**

In their second amended complaint (Rec. Doc. 48), the plaintiffs contend that they were minority partners in the Lafayette Cellular Telephone Company ("the

Partnership") and that, for many years, defendant Centennial Communications Corp. owned the majority general partnership interest.  In 2009, defendant AT&T Inc. acquired all of Centennial's assets.  The Federal Communications Commission ("FCC") and the Department of Justice ("DOJ") required AT&T Inc. to divest certain Centennial assets, including the majority interest in the Partnership.  To comply with that requirement, AT&T Inc. transferred Centennial's majority interest in the Partnership to defendant Verizon Wireless.  The plaintiffs contend that AT&T Inc. arranged, directed, executed, or orchestrated that transaction and they allege that, in connection with the sale transaction, both AT&T Inc. and Centennial divulged confidential Partnership information to Verizon Wireless in violation of their fiduciary duties.

AT&T Inc. filed a motion, under Rule 12(b)(2) of the Federal Rules of Civil Procedure, seeking to dismiss the plaintiffs' claims for lack of personal jurisdiction. The plaintiffs oppose the motion, arguing that the court has specific jurisdiction over AT&T Inc. because of its role in the series of transactions by which the majority interest in the Partnership came to be owned by Verizon Wireless.

<u>**DISCUSSION**</u>

This Court must decide whether it has personal jurisdiction over the plaintiffs' claims against AT&T Inc.

**A.    THE APPLICABLE STANDARD.**

When, as in this case, a nonresident defendant challenges personal jurisdiction, the plaintiffs, as the parties seeking to invoke the power of the court, bear the burden of proving that jurisdiction exists.[1]  Because AT&T Inc.'s motion will be decided without an evidentiary hearing, the plaintiffs are required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy their burden.[2]  A *prima facie* showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record.[3]  The court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the

---

[1]    *Luv N' care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006), citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[2]    *Central Freight Lines Inc. v. APA Transport Corp*., 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B*., 205 F.3d 208, 214 (5th Cir. 2000).

[3]    *Guidry v. U.S. Tobacco Co., Inc*., 188 F.3d 619, 625 (5th Cir. 1999).

plaintiffs.[4]  But the court is not required to credit conclusory allegations, even if left

uncontroverted.[5]

In determining whether personal jurisdiction is proper, a district court sitting

in diversity, as in this case, applies the law of the forum state in which it sits.[6]  The

Louisiana Long-Arm Statute provides that the court may exercise personal

jurisdiction over any nonresident so long as the basis for such jurisdiction is

consistent with the United States Constitution.[7]  Consequently, the limits of the

Louisiana Long-Arm statue are coextensive with the limits of constitutional due

process.[8]  This Court need only determine whether subjecting AT&T Inc. to suit in

Louisiana would be consistent with the Due Process Clause of the Fourteenth

Amendment.[9]

---

[4]      *Central Freight v. APA*, 322 F.3d at 376; *Alpine View v. Atlas*, 205 F.3d at 214; *Stripling v. Jordan Production Co.*, 234 F.3d 863 (5th Cir. 2000).

[5]      *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[6]      Fed. R. Civ. P. 4(e).

[7]      La. R.S. 13:3201.

[8]      *Alonso v. Line*, 02-2644 (La. 05/20/03), 846 So.2d 745, *cert. denied*, 540 U.S. 967 (2003); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1192 (La. 1987).  Texas's long-arm statute is also coextensive with the federal constitutional limits of due process.  *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008).  Therefore, Fifth Circuit cases regarding personal jurisdiction under that statute are equally applicable.

[9]      See, e.g., *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008).

-4-

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when:  (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.[10]  In other words, due process is satisfied when the defendant's connection with Louisiana is such that the defendant should reasonably anticipate being haled into court in Louisiana.[11]

Minimum contacts may give rise to either specific jurisdiction or general jurisdiction.  Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.[12]  General jurisdiction exists if the defendant has engaged in continuous and systematic activities in the forum state.[13]  The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.[14]  Therefore,

---

[10]     *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[11]     *Latshaw v. Johnston*, 167 F.3d at 211.

[12]     *Walk Haydel v. Coastal Power*, 517 F.3d at 243.

[13]     *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

[14]     *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

> Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant.  Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.[15]

To determine whether the court has personal jurisdiction over AT&T Inc. in this lawsuit, it is necessary to first evaluate AT&T Inc.'s contacts with the State of Louisiana.  If AT&T Inc. has sufficient contacts to satisfy specific or general jurisdiction, then the second part of the analysis requires an evaluation of the fairness of exercising jurisdiction over AT&T Inc.

The inquiry used to determine whether general jurisdiction exists is "dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum."[16]

The inquiry used to determine whether specific jurisdiction exists has three steps.  First, it must be determined whether the defendant has minimum contacts with the forum state or, in other words, whether the defendant has purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.[17]   Random, fortuitous, or attenuated contacts are

---

[15]     *Luv N' care v. Insta-Mix*, 438 F.3d at 469.

[16]     *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999).

[17]     *Nuivo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

insufficient.[18]  Second, it must be determined whether the plaintiff's cause of action arises out of or results from the defendant's contacts with the forum.[19]  Finally, if the plaintiff satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair or unreasonable.[20]

AT&T Inc. contends that it has insufficient contacts with the State of Louisiana to support the exercise of jurisdiction by the court.  The plaintiffs contend, to the contrary, that AT&T's contacts with the State of Louisiana are sufficient for the court to exercise specific jurisdiction over AT&T Inc.

## B.   THIS COURT LACKS PERSONAL JURISDICTION OVER AT&T INC.

The plaintiffs in this lawsuit do not argue that the court can exercise general jurisdiction over AT&T Inc.  They argue only that there is specific jurisdiction because of AT&T Inc.'s actions in connection with the series of transactions relative to the Partnership.  Therefore, in order to defeat AT&T Inc.'s motion, the plaintiffs must demonstrate (1) that AT&T Inc. purposefully directed its activities toward

---

[18]      *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[19]      *Nuivo Pignone v. STORMAN ASIA*, 310 F.3d at 378.

[20]      *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

Louisiana or purposefully availed itself of the privileges of conducting activities there, and (2) that the plaintiffs' cause of action arises out of or results from AT&T's contacts with Louisiana.  If the plaintiffs establish those two elements, AT&T will have the opportunity to show (3) that it would be unfair or unreasonable to permit a Louisiana court to exercise jurisdiction.  The evidence submitted by the parties establishes the following facts.

AT&T Inc. is a Delaware corporation with its principal place of business in Texas.  (Rec. Doc. 50-4 at 1).  AT&T Inc. is a holding company that conducts no business directly with the public.  (Rec. Doc. 50-4 at 2).  AT&T Inc. has no employees, sale representatives, or distributors; it does not manufacture a product or provide a service; it does not market or sell goods or services.  (Rec. Doc. 50-4 at 2).  AT&T Inc. does not have offices in Louisiana, does not conduct business with the public in Louisiana, is not licensed to do business in Louisiana, and does not own, manage, lease, or maintain any real property in Louisiana.  (Rec. Doc. 50-4 at 3).

AT&T Inc. is legally and factually separate from its subsidiaries, and each of its subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity, and structure.  (Rec. Doc. 50-4 at 2).  AT&T Inc.'s subsidiaries conduct, manage, and operate all aspects of the various telecommunications services provided under the AT&T brand.  (Rec. Doc. 50-4 at 2).

-8-

AT&T Inc. was never a partner in the Partnership.  (Rec. Doc. 50-2 at 2).  In 2009, AT&T Inc. acquired Centennial Communications Corporation, and Centennial became a wholly-owned subsidiary of AT&T Inc.  (Rec. Doc. 50-2 at 1).  Before AT&T Inc. acquired Centennial, Centennial owned an indirect interest in the Partnership because Centennial Lafayette Communications, LLC (a subsidiary of Centennial) owned a 55.939% interest in the Partnership and its parent company Centennial Cellular Operating Company, LLC owned a 44.0873% interest in the Partnership.  (Rec. Doc. 50-2 at 1-2).  Centennial Cellular Operating Company, LLC contributed its Partnership interest to Centennial Lafayette Communications, LLC and then Centennial Lafayette Communications, LLC contributed all of the Partnership interest to Zodiac Newco LLC.[21]  (Rec. Doc. 50-2 at 2).  Zodiac Newco LLC was acquired by Verizon in September 2010.  (Rec. Doc. 50-2 at 1, Rec. Doc. 50-3 at 2).  Accordingly, the majority ownership interest in the Partnership was transferred from Centennial to Verizon without AT&T Inc. becoming a direct owner of an interest in the Partnership.

---

[21]     In the declaration of Carolyn J. Wilder, Rec. Doc. 50-2, reference is made to both Zodiac Newco LLP and Zodiac Newco LLC.  In the declaration of Jose Menchaca, Rec. Doc. 50-3, reference is made to only Zodiac Newco LLC.  In the plaintiffs' second amended complaint, reference is made to Zodiac Newco LLC (Rec. Doc. 48 at 6).  The undersigned accordingly assumes that the reference to Zodiac Newco LLP was a typographical error.

Although AT&T Inc.'s purchase of Centennial's assets was a deliberate action, its acquisition of an indirect interest in the Partnership was wholly fortuitous, there being no evidence or allegation that AT&T Inc. acquired Centennial's assets for the purpose of acquiring an interest in the Partnership.  Furthermore, AT&T's acquisition of Centennial did not take place in Louisiana, the personnel negotiating the transaction on behalf of AT&T Inc. were not located in Louisiana, and the merger agreement between AT&T Inc. and Centennial was not negotiated or executed in Louisiana.  (Rec. Doc. 50-3 at 1-2).  As a condition to AT&T Inc.'s acquisition of Centennial, the FCC and the DOJ required AT&T Inc. to divest certain Centennial assets, including the ownership interests held by Centennial subsidiaries in the Partnership.  (Rec. Doc. 50-3 at 2).  The divestiture was accomplished by transferring the Partnership interests from various Centennial subsidiaries to Zodiac Newco LLC.  (Rec. Doc. 50-3 at 2).  Zodiac Newco LLC was then acquired by Verizon.  (Rec. Doc. 50-3 at 2).  The purchase agreement between AT&T Inc. and Verizon Wireless was not negotiated or executed in Louisiana.  (Rec. Doc. 50-3 at 2).  The merger agreement between AT&T Inc. and Centennial states that it is governed by Delaware (not Louisiana) law, and the purchase agreement between AT&T Inc. and Verizon Wireless states that it is governed by New York (not Louisiana) law.  (Rec. Doc. 50-3 at 2).

-10-

Succinctly, there is no allegation or evidence that AT&T Inc. purposefully directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities in Louisiana.  Therefore, the plaintiffs cannot satisfy the first prong of the applicable test.

The factual situation presented here is very different from that of *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982), the case on which the plaintiffs heavily rely.  In *Mississippi Express*, the plaintiff was a Mississippi company that sued the defendant, a California company, in Mississippi, seeking to recover the amounts due on several unpaid invoices.  The plaintiff was a freight broker that agreed to supply trucks to move the defendant's goods from one place to another.  On nineteen separate occasions over a two-month period of time, the defendant telephoned the plaintiff in Mississippi and requested its trucking services.  Thus, the shipments were all deliberately initiated by the defendant.  Upon receiving a telephone call from the defendant, the plaintiff's personnel in Mississippi then "direct[ed] from Mississippi per [the defendant's] instructions. . . nineteen shipments from one part of the United States to another, by the use of trucks garaged and serviced at the Mississippi headquarters of the plaintiff,"[22] with the plaintiff's

---

[22]     *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1011 (5th Cir. 1982).

Mississippi headquarters maintaining supervisory control over the shipments until they were complete.  The court found that the defendant had "sufficient deliberate, non-fortuitous contacts with Mississippi in the transactions at issue, so that subjecting them to jurisdiction within that state does not offend traditional notions of fair play and substantial justice."[23]

The same cannot be said in this case.  There are no deliberate, purposeful contacts between AT&T Inc. and the state of Louisiana in connection with the transaction by which AT&T Inc. acquired Centennial or in connection with the transaction by which Centennial's subsidiaries divested themselves of their ownership interest in the Partnership.  Any contact between AT&T Inc. and Louisiana in connection with those transactions is too attenuated to support personal jurisdiction and subject AT&T Inc. to litigation in this forum.

AT&T Inc. correctly argues that its subsidiaries' contacts with Louisiana cannot be imputed to AT&T Inc. for the purpose of finding personal jurisdiction. "[I]n this circuit, it is well-settled that where, as here, a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent."[24]  The plaintiffs maintain that their assertion of personal jurisdiction as

---

[23]     *Mississippi Interstate v. Transpo,* 681 F.2d at 1012.

[24]     *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773-74 (5th Cir. 1988).  See, also, *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 857 (5th Cir. 2000).

to AT&T Inc. is based on the actions of AT&T Inc. itself and not those of its subsidiaries.  "Plaintiffs do not contend that AT&T is subject to specific personal jurisdiction by virtue of the fact that it owned Centennial and Zodiac, but by virtue of its own actions in directing those entities to engage in the transaction with Verizon Wireless through which confidential Partnership [sic] was disclosed – a transaction that only occurred in order to facilitate AT&T's acquisition of Centennial."  (Rec. Doc. 65 at 9).  Even assuming that the plaintiffs are correct and AT&T Inc. directed Centennial and Zodiac to engage in the transaction with Verizon, this Court has no personal jurisdiction over AT&T Inc. unless AT&T Inc. had minimum contacts of its own with Louisiana.  The plaintiffs have not identified any such contacts other than the fact that the Partnership did business in Louisiana.  That single fact is a deliberate and purposeful contact on the part of the Partnership and, by extension, on the part of the subsidiaries that owned it, but not a deliberate and purposeful contact by AT&T Inc.  That single fact is, therefore, an insufficient basis for haling AT&T Inc. into court in this state.

In summary, then, the plaintiffs made no effort to establish that AT&T Inc. has continuous and systematic general business contacts with Louisiana.  Accordingly, the plaintiffs conceded that this Court does not have general jurisdiction over AT&T Inc.  Instead, the plaintiffs argue that specific jurisdiction exists but they failed to

-13-

establish that AT&T Inc. had sufficient deliberate and purposeful contacts with Louisiana in connection with the contractual transactions on which this lawsuit is based.  AT&T Inc. demonstrated both that its conduct with regard to these relevant transactions was conducted outside of Louisiana and that its subsidiaries' contacts with Louisiana cannot be imputed to it for the purpose of creating personal jurisdiction.  Finally, the jurisprudence relied upon by the plaintiffs is factually dissimilar and therefore affords little guidance for resolving the issue presented here.

In deciding whether the plaintiffs have made the requisite *prima facie* showing,[25] the undersigned concludes that the plaintiffs have not satisfied their burden of proving that AT&T Inc. has minimum contacts with Louisiana sufficient to meet the first prong of the specific jurisdiction test.  Consequently, the plaintiffs cannot satisfy the second prong of the test, which requires that the plaintiffs demonstrate that their cause of action arises out of or results from AT&T Inc.'s contacts with Louisiana.  Finally, because the undersigned has found that AT&T Inc.'s contacts with the State of Louisiana are insufficient to establish the minimum contacts needed for personal jurisdiction, whether specific or general, there is no need to proceed to the next step of the jurisdictional analysis, which examines whether exercising specific jurisdiction over the defendant comports with fair play and

---

[25]     *Luv N'care v. Insta-Mix*, 438 F.3d at 469.

substantial justice.[26]  The fairness of exercising jurisdiction is analyzed only after minimum contacts are established.

The undersigned finds that the plaintiffs have not proven that this Court has personal jurisdiction over AT&T Inc.  Consequently, the undersigned recommends that AT&T Inc.'s motion be granted and that the plaintiffs' claims against AT&T Inc. be dismissed without prejudice.

## CONCLUSION

The undersigned finds that the plaintiffs have failed to demonstrate that AT&T Inc. has sufficient minimum contacts with the State of Louisiana to permit the exercise of personal jurisdiction over AT&T Inc. in this forum.  Accordingly, the undersigned recommends that AT&T Inc.'s motion to dismiss for lack of personal jurisdiction (Rec. Doc. 50) be GRANTED and the claims asserted against it in this lawsuit be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

---

[26]     *Panda v. Potomac*, 253 F.3d at 870.

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on this 30th day of May, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-16-